```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND


ACTION BUSINESS SYSTEMS, INC.    :
                                 :
v.                               :   Civil No. WMN-03-3562
                                 :
GENERAL ELECTRIC CAPITAL         :
         CORPORATION             :
```

**MEMORANDUM**

Before the Court is Defendant General Electric Capital Corporation's motion to dismiss the Amended Complaint. Paper No. 43. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion will be granted in part and denied in part.

This action arises out of the leasing of a large number of copiers to the University of Maryland Medical Systems, Inc. (UMMS). In Count I of the Amended Complaint, Plaintiff alleges that it, UMMS, Toshiba America Information Systems (TAIS), and Defendant General Electric Capital Corporation (GEC) entered into a four-party global agreement in May 1996, whereby Plaintiff, as an agent of TAIS, would provide the copiers to UMMS, UMMS would pay $0.015 per copy to GEC, and GEC would pass along $0.008 of the $0.015 to Plaintiff. Although GEC has remitted approximately $1,000,000.00 to

Plaintiff, Plaintiff alleges that under the terms of the global agreement, an additional $726,544.00 is owed. In Counts II through VII, Plaintiff brings claims for essentially the same relief under various quasi-contract and tort theories. These claims are brought "in the alternative," should it be found that there was no express contractual relationship between Plaintiff and GEC. See, e.g., Am. Compl. ¶ 34.

Defendant GEC argues in its motion that all of Plaintiff's claims are barred by limitations. Observing that Plaintiff alleges that "[n]ot long after the inception of the global agreement, GEC began to engage and otherwise perpetrate a scheme of systematic and continuous efforts to withhold and/or to delay payments that were rightfully due to be paid, pursuant to the global agreement," Defendant argues that Plaintiff's cause of action accrued in 1996. Because suit was not filed until July 25, 2003, Defendant contends Plaintiff's claims are completely barred under Maryland's three year general statute of limitations. See Md. Code. Ann., Cts. & Jud. Proc. § 5-101.[1]

---

[1] Section 5-101 provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Neither party has pointed to an alternate limitations statute.

In response, Plaintiff offers three general rebuttals to GEC's limitations argument.  First, Plaintiff contends that, because the Amended Complaint is silent as to the exact dates on which GEC was required to remit payments to payment, it cannot be determined when Plaintiff's cause of action accrued. Second, Plaintiff argues that application of the "discovery rule" renders it a disputed question of fact as to when Plaintiff's causes of action accrued.  Finally, Plaintiff posits that GEC's fraud and concealment prevented Plaintiff from discovering its injuries, thus delaying accrual under Md. Code Ann., Cts. & Jud. § 5-203.[2]  Unfortunately for Plaintiff, none of these arguments are consistent with the allegations in the Amended Complaint.

The Amended Complaint contains a detailed accounting for each copier including the date on which it was delivered, the minimum monthly usage assigned to that copier, the monthly compensation due, and the total compensation due.  These figures were obviously taken from Plaintiff's own records. Furthermore, Plaintiff clearly states that GEC was to remit payments to Plaintiff on a monthly basis.  See Am. Compl. ¶

---

[2] Section 5-203 provides that, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."

3

14.  Thus, Plaintiff knew from its own records exactly how much it was supposed to receive from GEC each month and it either received that amount or it did not.  While invoking generally the discovery rule and the fraudulent concealment doctrine, Plaintiff identifies no specific facts that it needed to uncover in order to know that it had a cause of action against GEC.[3]

GEC, however, is incorrect in concluding that Plaintiff's claims are completely barred.  Under Maryland law, "where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations."  Singer Co. v. Baltimore Gas & Elec. Co., 558 A.2d 419, 426 (Md. App. 1989); see also Kaliopulus v. Lumm, 141 A. 440, 445 (Md. 1928) ("on the happening of any breach the covenantees had a right of action, no matter the

---

[3] The claims in the Amended Complaint seem to be based on the minimum usage figures for the copiers in question, i.e., Plaintiff does not appear to be making any claim for usage above those minimums.  Even if it were making such claims, actual usage figures for the copiers would have been available to Plaintiff.  As the party responsible for maintenance on the machines, Plaintiff would have had regular access to the counters and would have been put on notice of any additional amounts due.

4

number of preceding breaches, as each successive breach in the course of the continuing or recurring breaches was constantly creating fresh causes of action"); Dameron v. Sinai Hospital of Baltimore, 815 F.2d 975, 981 (4th Cir. 1987) (holding that each time defendant issued benefit check based on miscalculated benefit, statute of limitations began running for claims based on that check); Cecil v. AAA Mid-Atlantic, Inc., 118 F. Supp. 2d 659 (D. Md. 2000) (following Dameron).

Relying on Judge Smalkin's decision in Miller v. Pacific Shore Funding, 224 F. Supp. 2d 977 (D. Md. 2002), GEC argues that the alleged monthly breaches of the global agreement are really "'no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago.'"  Mot. at 4 (quoting Miller, 224 F. Supp. 2d at 990, emphasis added by GEC).  As such, all claims would be barred. See Miller, 224 F. Supp. 2d at 990.  Miller, however, is factually distinguishable from the case at bar.  In Miller, the plaintiffs alleged that their mortgage lender charged and collected excessive or unauthorized fees in conjunction with loans made to them.  The disputed fees were disclosed and itemized in the closing documents but were not paid at closing.  Instead, those fees were included in the total indebtedness on the loan and, thus, a portion of each monthly

5

mortgage payment represented a portion of the allegedly unlawful fees imposed at origination.  In rejecting one plaintiff's contention that each monthly mortgage payment renewed the accrual of the plaintiff's cause of action, Judge Smalkin opined that, if the fees violated Maryland's Secondary Mortgage Loan Law as the plaintiffs claimed, "the violation has inflicted a single monetary injury whose amount increases steadily over time."  224 F. Supp. 2d at 990.  Furthermore, the plaintiff "had sufficient knowledge of the circumstances indicating that he might have been harmed" at the closing of the loan.  Id.

 Miller is different from the case at bar in that Miller addressed a one-time calculation and assessment of allegedly improper fees that were simply divided into monthly payments.  There was no new wrongdoing each month, but just the playing-out of the repercussions that the initial wrong set into motion.  In contrast, under the global agreement at issue here, the amount due to Plaintiff would be calculated each month and would change over time as the number of copiers in place and the number of copies made would change.  While it is alleged that GEC was following a common scheme each month in the manner in which it miscalculated the amounts due, it is also alleged that there was a new act of wrongdoing each

6

month.  Accordingly, only those claims based on payments made more than three years prior to the filing of this suit are time barred.

Defendant also argues that all of Plaintiff's quasi-contact claims should be dismissed in that "'no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"  Mot. at 5 (quoting County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc., 358 Md. 83 (2000)).  Defendant raises a similar challenge to Plaintiff's intentional interference with contract and intentional interference with business relationship claims.  Defendant argues that these torts "'will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered.'"  Mot. at 6 (quoting Kaser v. Financial Protection Marketing, Inc., 376 Md. 621, 629 (2003)).

While it is true that a plaintiff "may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute."  Swedish Civil Aviation Admin. v. Project Mgmt Enterprises, Inc., 190 F. Supp. 2d 785, 792 (D. Md. 2002).

7

Plaintiff makes clear that its quasi-contract and intentional interference claims are pled in the alternative.  While GEC states in its reply brief that "there is no dispute that an express contract existed between the parties," Reply at 2, its position heretofore in this litigation has been considerably more non-committal.  See GEC's previous Motion to Dismiss Complaint at 5-7 (arguing that none of the documents attached to the original complaint establish a contract between Plaintiff and GEC).  Until such time as Defendant acknowledges the existence of its contractual obligations to Plaintiff in a manner which is binding upon it, the Court will allow Plaintiff to continue to pursue alternative theories of recovery.

   Finally, Defendant urges that Plaintiff's conversion claim should be dismissed because it is "merely a 'tort version' of [Plaintiff's] breach of contract claims."  Mot. at 7.  The Court agrees that while Plaintiff alleges that GEC's employees were motivated by "ill will, spite, and hatred," Am. Compl. ¶ 60, the conduct of which it complains is nothing more than conduct that would constitute a breach of contract, i.e., the failure to pay Plaintiff the funds that it should have paid.  If a contractual relationship is established, the Court would agree that the conversion claim should be dismissed.

See <u>Institute of Mission Helpers of Baltimore City v. Reliance Ins. Co.</u> 812 F. Supp. 72, 75 (D. Md. 1992) (quoting <u>Fink v. Pohlman</u>, 582 A.2d 539, 543 (1990) for the proposition that "'to establish a conversion growing out of a contract, a positive tortious act beyond a mere breach of the contract is necessary,'"). At this juncture, however, the Court will allow the alternative pleading in tort.

    A separate order consistent with this memorandum will issue.

 

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: April 26, 2005